UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TROY A SIMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:16-cv-00662-RLY-MPB |
| | ) | |
| NANCY A. BERRYHILL Acting | ) | |
| Commissioner for the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed.

R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No.

24). Plaintiff Troy A. Sims seeks judicial review of the Social Security Administration's final

decision deeming him ineligible for Disability Insurance Benefits and Supplemental Security

Income. The matter is fully briefed. (Docket No. 17, Docket No. 22, Docket No. 23). It is

recommended that the District Judge **REMAND** the decision of the Commissioner of the Social

Security Administration finding that Troy A. Sims is not disabled, pursuant to sentence four of

42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

**Introduction**

On August 18, 2010, Troy A. Sims, filed an application for disability and Disability

Insurance Benefits under Title II of the Social Security Act and for Social Security Supplemental

Security Income disability benefits under Title XVI of the Social Security Act. He is alleging

disability beginning September 1, 2009. A hearing was requested and a video hearing was held on March 15, 2012 before Administrative Law Judge (ALJ) Joseph L. Brinkley. On August 21, 2012, the ALJ issued a decision denying Mr. Sims benefits. On December 5, 2013, the Appeals Council remanded the case to the ALJ for further proceedings. Upon remand the ALJ was to obtain additional evidence concerning Mr. Sims's cellulitis, diabetes with ulcers and retinopathy; give further consideration to Mr. Sims's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations; and obtain evidence from a vocational expert (VE) to clarify the effect of the assessed limitations on Mr. Sims's occupational base.

On remand, a video hearing was held on May 13, 2014, again before ALJ Joseph L. Brinkley. On September 12, 2014, the ALJ issued a decision denying Mr. Sims benefits. On January 27, 2016, the Appeals Council upheld the ALJ's decision and denied the request for review, thereby making the ALJ's decision the final decision of the Social Security Commissioner. 20 C.F.R. § 404.981; *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). On March 24, 2016, Mr. Sims timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

## Standard for Proving Disability

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Plaintiff is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of

substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B). The Social Security Administration ("SSA") has implemented these statutory standards by prescribing a five-step sequential evaluation process. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe. If he is not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). The Listings include medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his vocational profile (age, work experience, and education) and his RFC. If so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the

Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. This court must affirm the ALJ's decision unless it lacks the support of substantial evidence or rests upon a legal error. *See, e.g.*, *Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009); 42 U.S.C. § 405(g). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ—not the court—holds discretion to weigh evidence, resolve material conflicts, make independent factual findings, and decide questions of credibility. *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971). Accordingly, the court may not re-evaluate facts, reweigh evidence, or substitute its judgment for the ALJ's. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made. The ALJ must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

**Analysis**

I.     **The ALJ's Sequential Findings**

The ALJ found that Mr. Sims met the insured status requirement of the Social Security Act. He further found that Mr. Sims had not engaged in substantial gainful activity since September 1, 2009. (Docket No. 13-2 at ECF p. 20). Therefore, the ALJ proceeded to step two of the analysis.

At step two, the ALJ determined that Mr. Sims, who is currently forty-seven years old, had the following severe impairments: diabetes mellitus; cellulitis; erosive arthritis; hypertension; obesity; peripheral neuropathy; and a learning disorder. (Docket No. 13-2 at ECF pp. 20-21); *See* 20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*

At step three, the ALJ found that Mr. Sims's combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R § 404, subpart P, Appendix 1, explicitly considering Listings 1.02, 4.00, 8.04, 9.00, and 11.14. (Docket No. 13-2 at ECF p. 21).

The ALJ found the severity of claimant's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of Listing 12.02. The ALJ considered the four functional areas set out in the disability regulations, i.e., the "paragraph B" criteria. (Docket No. 13-2 at ECF pp. 21-22). The ALJ found that Mr. Sims's (1) activities of daily living were mildly limited, noting that he does not do any household chores or cook, but he is able to toilet independently; (2) social functioning was mildly limited, noting that the claimant stays at different friends' homes through the week and testified to keeping his nine-year-old daughter frequently; (3) concentration, persistence, or pace was moderately limited, crediting claimant's testimony that he only completed the tenth grade and has trouble reading and writing, but also

noting that he plays video games with his daughter when she comes to visit; (4) and no episodes of decompensation for an extended period of time. ([Docket No. 13-2 at ECF pp. 22-23](#)).

Prior to Step four, the ALJ determined that Mr. Sims had the RFC to perform light work except that the claimant:

> [C]an continuously lift up to twenty pounds and can frequently lift between twenty-one to fifty pounds. He can sit for four hours at one time without interruptions for a total of seven hours in an eight-hour workday with interruptions and regularly scheduled breaks; he can stand for twenty minutes at one time without interruptions for a total of one hour in an eight-hour workday with interruptions and regularly scheduled breaks; and while requiring an at-will option for how long he can walk at one time without interruptions, he can walk for only a total of twenty minutes in an eight-hour workday with interruptions and regularly scheduled breaks. The claimant is limited to occasionally use the dominant right lower extremity for operation of foot controls and limited to frequent use [of] the left lower extremity for operation of foot controls. He can occasionally work around unprotected heights, moving mechanical parts, dust, fumes, and extreme cold/heat but can continuously operate motor vehicle and be around humidity, wetness, and vibration. He is also limited to moderate noise conditions. In addition, the claimant can continuously use the upper extremities to reach overhead and in all directions as well as to continuously handle, finger, feel, and pull/push. However, due to limitations regarding the ability to read and write, the claimant is limited to occasional handling, sorting papers and using paper files.

([Docket No. 13-2 at ECF p. 23](#)).

At Step four, the ALJ noted that Mr. Sims did not have any past relevant work to consider. ([Docket No. 13-2 at ECF p. 30](#)). At Step five, the ALJ classified the claimant as a younger individual age 18-49, with a limited education and is able to communicate in English. ([Docket No. 13-2 at ECF p. 30](#)). The ALJ found that there were jobs that exist in significant numbers in the national economy that the claimant can perform. Based on the testimony of the VE and, considering the claimant's age, education, work experience, and RFC, the ALJ

concluded that the claimant would also be able to perform the jobs of table worker and printed circuit board assembler. (Docket No. 13-2 at ECF pp. 30-31).

## II. **Review of Plaintiff's Assertions of Error**

### A. **The ALJ's credibility determination was not patently wrong and he did not err in his analysis of the evidence regarding Plaintiff's ambulatory abilities.**

Plaintiff argues that the ALJ's credibility finding was erroneous and patently wrong because he dismissed Mr. Sims's need to use a cane or crutches to walk on the basis that this testimony was contradicted by medical evidence—when it was not. (Docket No. 17 at ECF p. 17). He argues that the record shows he suffers from chronic non-healing diabetic ulcers on his feet that have "healthy" periods, thus he does not need crutches or a walker, and periods where there are open wounds and he does use a cane or walker during those periods. Similarly, Plaintiff argues the ALJ erred by dismissing the VE's testimony that jobs would no longer be available if an individual required a cane in his dominant hand because claimant stated at his most recent examination that he could walk without a cane, especially because there are records where doctors found an ambulatory device was necessary. (Docket No. 17 at ECF p. 18). Finally, with regards to ambulation, Plaintiff argues the ALJ erred by noting no physician documented specific limitations or restrictions because a non-working claimant cannot be attacked for lack of serious work restrictions, given that they are not working. (Docket No. 17 at ECF p. 19).

The Commissioner responds that Plaintiff has failed to show that the ALJ's conclusion lacked any explanation or support, particularly given that Plaintiff reported to examining physicians that he could walk without a cane, and that those physicians observed him to be able to walk without a cane, which his pertinent and supportive of the ALJ's RFC conclusion and credibility determination. (Docket No. 22 at ECF pp. 10-11).

The ALJ's credibility determination—where he concluded that the claimant's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible—reasoned, in relevant part:

> There was also many inconsistencies in the claimant's allegations. At the previous hearing, he alleged he had not been able to be on his right foot since February 2012. However, he admitted that between pain he did not need crutches or a walker to ambulate, but he later testified that he needed his cane ninety percent of the time.

(Docket No. 13-2 at ECF p. 29).

And also:

> I have considered the contentions and limitations set forth by the claimant's representative . . . She asked whether the jobs given for the residual functional capacity used in this decision would still be available if an individual required a cane in his or her right dominant hand. The vocational expert stated there would be no available jobs. . . . While the claimant stated he needed to use a cane ninety percent of the time, he alleged during his most recent consultative examination that he could walk without a cane. Moreover, it does not appear that any physician indicated that a cane was medically necessary for ambulation. In addition, it does not appear that the claimant's treating physicians provided functional limitations regarding the alleged conditions. Thus, the representative's contentions and limitations are unsupported by the objective medical evidence of the record.

(Docket No. 13-2 at ECF pp. 29-30).

The court gives great deference to the ALJ's credibility finding, only overturning it if it is "patently wrong." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be 'patently wrong' and deserving of reversal." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (internal citations omitted).

Here, contrary to the ALJ's credibility determination, the record does not show inconsistencies between the Plaintiff's testimony and the medical evidence. In discrediting

Plaintiff, the ALJ pointed out that at the previous March 2012 hearing he alleged that he had not been able to be on his right foot since February 2012, however he admitted that between pain he did not need crutches or a walker to ambulate, but later testified that he needed his cane ninety percent of the time. (Docket No. 13-2 at ECF p. 29). It is unclear what is inconsistent with these findings. The first hearing took place on March 15, 2012, which was in a time period where Plaintiff was suffering multiple non-healing diabetic foot ulcerations that were open wounds for more than two months, during which he also endured a week-long hospitalization. (Docket No. 13-11 at ECF p. 41; Docket 13-14 at ECF pp. 81, 83, 92, 93, 95, 132; Docket No. 13-15 at ECF p. 4). Therefore, the allegation that he had not been able to be on his right foot since February 2012 was accurate and medically verified in the record.

Sims does have periods of "healthy" feet (when he does not have open wounds), which correlates to his testimony that "between pain" he does not need crutches or a walker to ambulate. It would be mere conjecture for this court to conclude that the ALJ found those "periods" to be greater than 10% of the time, thus contradicting Plaintiff's testimony that he needed a walking device 90% of the time. The ALJ simply does not address the frequency or duration of these periods of ulcerations.

The ALJ's discrediting of Plaintiff is more concerning when taken in the context of Dr. Warr's consultative examiner report. The ALJ afforded Dr. Warr's April 18, 2012, medical opinion significant weight "due to its consistency with the examination findings here." (Docket No. 13-2 at ECF p. 27). Dr. Warr's report, in one breath, indicates that a cane is not required for standing or ambulation (Docket No. 13-12 at ECF p. 5). However, in a subsequent section of the same report Dr. Warr indicates that Plaintiff "cannot ambulate without using a wheelchair, walker, or 2 canes, or 2 crutches." (Docket No. 13-12 at ECF p. 9). Dr. Warr's narrative does

little to clarify this contradiction, indicating Plaintiff states he has had multiple episodes of ulcer formation, mostly on right lower extremity, but also on left and is currently nonweight bearing due to these non-healing ulcers. ([Docket No. 13-12 at ECF p. 10](#)). More troubling is that the ALJ provides this record significant weight while not addressing the contradictions.

The impact of this unaddressed contradiction is magnified further as the ALJ dismissed the VE's testimony that the available jobs would no longer be available if an individual required a cane in his or her right dominant hand. The ALJ dismissed this testimony because "while the claimant stated he needed to use a cane ninety percent of the time (which claimant testified included standing and walking), he alleged during his most recent consultative examination that he *walk* a cane." ([Docket No. 13-2 at ECF p. 30](#)). The ALJ's conclusion is partially accurate. Dr. Lee opined in his April 2014 consultative report that Plaintiff could walk up to 30 minutes without a cane. ([Docket No. 13-12 at ECF p. 22](#)). However, Dr. Lee's opinion is silent as to Plaintiff's ability to stand without a cane for any duration. This is particularly relevant given the VE's testimony, which the ALJ relied on to discredit the Plaintiff, involved standing without a cane, not walking:

> Q: [I]f I were to add that for a person to have to stand for one hour they would require a cane in their right dominant hand, would [table worker and printed circuit board assembly] still be there?
>
> A: No, ma'am.
>
> ([Docket No. 13-2 at ECF p. 77](#)).

The Commissioner attempts to save the ALJ's credibility determination by citing evidence that the Plaintiff told examining physicians that he could walk without a cane and those physicians observed him to be able to walk without a cane. ([Docket No. 13-2 at ECF p. 28](#)) ([Docket No. 13-8 at ECF p. 103](#)) (Plaintiff reported to Dr. Sobat he could walk, though he had

difficulty); ([Docket No. 13-8 at ECF p. 104](#)) (Dr. Sobat observed that Plaintiff's gait was normal and he used no assistive device), ([Docket No. 13-8 at ECF p. 11](#)) (Plaintiff reported to Dr. Warr that he could walk for about 20 minutes), ([Docket No. 13-8 at ECF p. 17](#)) (Plaintiff reported to Dr. Lee that he could walk without a cane); ([Docket No. 13-8 at ECF p. 20](#)) (Dr. Lee observed Plaintiff had a stable gait despite a limp favoring his left leg). However, this evidence does not contradict Plaintiff's testimony, as Plaintiff testified that between ulceration periods he could walk without a cane. It is notable that Dr. Warr's internally contradictory report is also one of the reports the Commissioner relies on, further weakening this argument.

In sum, it is the responsibility to of the ALJ to resolve conflicting evidence and to make credibility determinations, not this court. *Diaz v. Chater*, 55 F.3d 300, 307-08 (7th Cir. 1995). Yet, we cannot uphold an administrative decision "that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (internal citations omitted). An ALJ still must competently explain an adverse-credibility finding with specific reasons that are "supported by the record." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015). Remand is required on this issue.

### B. The ALJ erred at Step 3—the Listings' Assessment.

Plaintiff also argues the ALJ's analysis regarding the Listings was inadequate and the "very type" of perfunctory analysis that has been rejected by the Seventh Circuit. ([Docket No. 17 at ECF p. 22](#)). Plaintiff argues Listing 11.14 (peripheral neuropathies) was met because he has been consistently diagnosed with bilateral lower extremity neuropathy with decreased sensation in his bilateral feet. ([Docket No. 17 at ECF p. 24](#)). Plaintiff argues Listing 8.04 (chronic skin lesions) is met as the record is replete with treatment and hospitalizations for chronic and

recurring non-healing diabetic skin ulcerations. ([Docket No. 17 at ECF pp. 24-25](#)). Even if Listing 8.04 was not met, Mr. Sims argues the ALJ should have considered whether he equaled a listing pursuant to the directives at Listing 8.00(C). *Id.*

Mr. Sims also argues that the ALJ erred by not obtaining an updated medical opinion from a medical expert as additional evidence was received that could have modified the State Agency medical consultant's finding that the impairment was not equivalent in severity to any impairment in the Listing of Impairments. ([Docket No. 17 at ECF pp. 27-29](#)).

The Commissioner contends that Plaintiff has not met his burden of showing the aforementioned Listings met. ([Docket No. 22 at ECF p. 4](#)). She argues that the Plaintiff does not cite to any evidence that shows the specific elements of Listing 11.14 was met; that Plaintiff acknowledges he did not need to return for treatment of his wounds after two months, despite Listing 8.04's requirement that a skin infection persist for at least three months despite treating; and that in regards to Listing 1.02 Plaintiff points to no gross anatomical deformity, no evidence of chronic joint pain and stiffness, and no signs of limitations of motion in any joint—as required by the Listing. ([Docket No. 22 at ECF p. 5](#)). Finally, the Commissioner argues that the ALJ was not required to obtain updated or additional medical opinions because none of the evidence received after the state agency medical experts provided their opinions suggested that Plaintiff's condition could have met or equaled a listing or that his condition had substantially changed since the available opinions were authored. ([Docket No. 22 at ECF p. 7](#)).

At Step 3, the ALJ reasoned, in relevant part, that:

> The claimant's representative did not contend his conditions meet or medically equal a listed impairment. I specifically considered Listings 1.02, 4.00, 8.04, 9.00, and 11.14. The claimant's impairments, neither singly nor in combination, medically meets or equals the severity requirements of any listed impairment.

> Moreover, the medical records do not evidence the required elements to meet or medically equal a listing.

(Docket No. 13-2 at ECF p. 22).

At step three of the sequential analysis, "evidence demonstrating the claimant's impairments is compared to a list of impairments presumed severe enough to preclude any gainful work." *Rice v. Barnhart*, 384 F.3d 363, 365 (7th Cir. 2004). In order to establish presumptive disability under a listing, each of the specified medical criteria of the listing must be satisfied; an impairment that manifests only some of the criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S 521, 530 (1990). The claimant bears the burden of proof at this step of the analysis. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012) ("Filus had the burden of establishing that he met all of the requirements of a listed impairment."). In regards to the sufficiency of a Step 3 analysis, "the ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).

Plaintiff argues he met the requirements of Listing 8.04 (Chronic infections of the skin or mucous membranes), which requires a showing of extensive fungating or extensive ulcerating lesions that persist for at least 3 months despite continuing treatment as prescribed. 20 C.F.R. Pt. 404, Subpart P, App. 1, § 8.04. Indeed, the record is replete with treatment and hospitalizations for chronic and recurring non-healing diabetic skin ulcerations. (Docket No. 13-8 at ECF pp. 7, 12, 17, 58, 60, 72; Docket No. 13-14 at ECF pp. 78, 81, 83, 91, 93, 95, 132; Docket No. 13-15 at ECF pp. 4, 6). Plaintiff asserts that many of these flare-ups lasted for well over two months, but admits exact dates of healing are unknown as he did not need to return for treatment any longer, but recorded treatment dates of the same flare-up occur over periods of time often spanning at least two months. (Docket No. 17 at ECF p. 25).

Plaintiff's asserted treatment dates do not meet Listing 8.04, but Listing 8.00(C)(2) provides:

> If you have skin lesions, but they do not meet the requirements of any of the listings in this body system, you may still have an impairment that prevents you from doing any gainful activity when we consider your condition over time, especially if your flare-ups result in extensive skin lesions, as defined in C1 of this section. Therefore, if you have frequent flare-ups, we may find that your impairment(s) is medically equal to one of these listings even though you have some periods during which your condition is in remission. We will consider how frequent and serious your flare-ups are, how quickly they resolve, and how you function between flare-ups to determine whether you have been unable to do any gainful activity for a continuous period of at least 12 months or can be expected to be unable to do any gainful activity for a continuous period of at least 12 months. We will also consider the frequency of your flare-ups when we determine whether you have a severe impairment and when we need to assess your residual functional capacity.

20 C.F.R. Pt. 404, Subpart P, App. 1, § 8.00(C)(2).

As shown by the numerous records of skin lesions and by Drs. Warr and Lee's consultative examiner reports, discussed in depth above, there is substantial evidence of chronic and recurring non-healing diabetic skin ulcerations. There is no evidence the ALJ considered the impact of the frequency and severity of his flare-ups at Step 3 or in his RFC determination. There is no requirement that the ALJ include a repetitive analysis of the evidence in his Step 3 determination and elsewhere in the record, but he also cannot fail to discuss critical evidence of possible medical equivalence. *Compare Buckhanon ex rel. J.H. v. Astrue*, 368 Fed. App'x 674, 678-79 (7th Cir. 2010) ("There is no requirement of such tidy packaging . . . we read the ALJ's decision as a whole and with common sense."); *with Barnett v. Barnhart*, 381 F.3d 664 (7th Cir. 2004) ("[ALJ's] opinion fails to mention the strongest piece of evidence supporting Robert's claim for benefits under the listing."). Given the evidence of the frequency and severity of

Plaintiff's flare-ups, the ALJ erred by failing to discuss these matters at Step 3 or to consider them in his RFC determination.

Notably, the Commissioner defends the ALJ's analysis under Listing 8.04 only by arguing no evidence showed Plaintiff's ulcers lasted the requisite three months, ignoring the applicability of Listing 8.00(C)(2). A review of the ALJ's decision, particularly in light of the contradictory portions of Drs. Warr and Lee's records discussed earlier, does not bridge a logical gap between the evidence showing frequent and chronic ulcers and the ALJ's failure to consider Listing 8.00(C)(2). Remand is appropriate to provide further explanation as to whether Listing 8.04 is met and, if not, the implications of Listing § 8.00 as to whether Plaintiff's impairments medically equal a listing and/or the guidance's applicability to the ALJ's RFC determination.

Plaintiff also argues he met the requirements of Listing 11.14 (peripheral neuropathy). Listing 11.14 requires either disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities OR it requires a marked limitation in physical functioning and in understanding, remembering or applying information; or interacting with others; or concentrating, persisting, or maintaining pace; or adapting or managing oneself. 20 C.F.R. Pt. 404, Subpart P., App. 1, § 11.14. Mr. Sims merely argues that he has consistently been diagnosed with bilateral lower extremity neuropathy with decreased sensation in his bilateral feet. (Docket No. 17 at ECF p. 24). The ALJ properly noted Plaintiff's diagnosis of peripheral neuropathy and found it to be a severe impairment. (Docket No. 13-2 at ECF p. 21). A diagnosis alone is insufficient to establish a listing has been met. However, the ALJ's mishandling of contradictory evidence as discussed above is insufficient to enable this court to understand the ALJ's reasoning in concluding that Plaintiff did not meet Listing 11.14. Accordingly, on remand the ALJ must

provide further explanation as to why Listing 11.14 was not met, as well as the remainder of the Listings he named at Step 3.

Finally, Mr. Sims argues the ALJ failed to obtain a medical opinion on whether a claimant's condition equals a listed impairment. (Docket No. 17 at ECF pp. 27-29). The Commissioner argues that the ALJ was not obligated to obtain any additional opinions on the issue of listing equivalence as he was entitled to rely on the state agency physician's opinions that Mr. Sims did not meet or equal a listing impairment. (Docket No. 22 at ECF p. 7).

Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue. *See* 20 C.F.R. § 404.1526(b) ("Medical equivalence must be based on medical findings . . . We will also consider the medical opinion given by one or more medical or psychological consultants designated by the Commissioner in deciding medical equivalence."); SSR 96-6P at 3 ("[L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.").

Here, the ALJ provided the state agency physicians, citing records by Dr. Corcoran and Dr. Neal, limited weight because "additional evidence was submitted that the medical examiners were unable to consider." (Docket No. 13-2 at ECF p. 28; citing, Docket No. 13-8 at ECF pp. 105-113). Yet, the Commissioner relies on this very evidence to defend both the ALJ's Listing analysis and the ALJ's decision not to update those opinions. (Docket No. 22 at ECF p. 6). This defense is circular and falls short as the ALJ himself recognized the shortcomings of these opinions and did not rely on them.

An ALJ is not required to obtain updated or additional medical opinions unless new evidence might cause the initial opinion to change. *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x at 679; *see also* SSR 96-6p. Here, the ALJ provided limited weight to the state agency examiners *because* they did not have the benefit of reviewing all the records. No other explanation was provided. The logical inference based on that conclusion was that the ALJ reasoned this new evidence might cause the initial opinion to change—if the ALJ thought the new evidence would have no impact on their opinions then it would have been reasonable for him to rely on those opinions. Therefore, given that the ALJ did not rely on the medical judgement of the state-agency consultants, solely due to these new records, the ALJ erred in not obtaining an updated medical opinion.

### C.  The ALJ's residual functional capacity on remand.

Given the court's earlier directive for remand, the ALJ's RFC determination will likely require review, particularly, in light of the directives to address Dr. Warr's report's internal contradictions and to reconsider Plaintiff's testimony regarding his ability to ambulate and stand with or without a cane. However, the court will briefly address the other arguments Plaintiff raised regarding the ALJ's residual functional capacity determination in the event that remand does not impact the RFC.

Mr. Sims critiques the ALJ's finding of a medium level of lifting and carrying, consistent with light work, but less than full range of sedentary level of sitting, walking, and standing, because the ALJ still found the claimant's exertional level to be light work. (Docket No. 17 at ECF p. 14). He also critiques that the limit of standing for only twenty minutes at one time for a total of one hour and walking for a total of twenty minutes in an eight hour workday does not equate to an ability to stand and walk occasionally as is required for sedentary jobs. (Docket No.

17 at ECF p. 15). He finally asserts that when given the exact hypothetical RFC relied ultimately adopted by the ALJ, the VE stated at three separate times that no work would be available. *Id.*

The Commissioner disagrees that the VE testified no jobs were available, but instead testified that while no light work jobs were available there were sedentary jobs available. (Docket No. 22 at ECF p. 12). Moreover, the Commissioner asserts that there is no inconsistency or error in relying on the VE's testimony as not every job relied upon must utilize the full extent of each of Plaintiff's abilities. *Id.*

An RFC does not represent the least a Plaintiff can do, but rather the most. 20 C.F.R. § 404.1545(a). Moreover, at Step 5 of the sequential evaluation process, RFC must be expressed in terms of the exertional categories when the adjudicator determines whether there is other work the individual can do. However, it is "necessary to assess the individual's capacity to perform each of [the exertional and nonexertional functions] in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." SSR 96-8p.

At first glance, the ALJ's RFC does appear contradictory, but upon full review of the record and especially the hearing testimony, it is not. First, Plaintiff's critique that limiting Plaintiff's standing and walking limitations to a range less than full sedentary. While SSR 96-9p, as cited to by plaintiff, provides that assigning limitations less than a full range of sedentary work is "expected to be relatively rare," the same ruling also provides that such an assignment "does not necessarily equate with a decision of 'disabled,'" instead, it requires the adjudicator to consider "whether there is other work in the national economy that the individual is able to do[.]" SSR 96-9p. This is exactly what the ALJ did in this matter. Plaintiff's assertion that the RFC's limitation that the Plaintiff can only stand for twenty minutes at one time for a total of one hour

in an eight hour workday and walking for a total of twenty minutes in an eight hour workday

contradicts the requirement to stand and walk occasionally, which the regulations define as one-

third of the time, also fails. There is no prohibition from limiting a claimant to less than the

sedentary level for walking and standing, in fact SSR 96-8p requires the ALJ to do so where the

Plaintiff's impairments do not meet the full description of an exertional level.

Plaintiff's assertion that the VE stated that no work would be available with the RFC

ignores the full record. In fact, there was a lengthy discussion between the ALJ and the VE on

this very issue during the hearing. The VE did initially testify that based upon the ultimate

hypothetical, there would be no jobs available at Step 5. (Docket No. 13-2 at ECF p. 73). The VE

then clarified that this was due to "the sitting and standing at will. Sitting, standing, walking at

will. There's—it's too frequent for an average light job." *Id.* The ALJ clarified: ". . . he can go

anywhere from light to sedentary. But the most he can do is a light modified . . ." *Id.* The ALJ

further clarified that "I guess I put him at the modified light because of the lifting and carrying is,

is almost unrestricted . . . [s]o this is one of those hypotheticals that runs across the exertional

boundaries." (Docket No. 13-2 at ECF p. 74). The ALJ then asked for sedentary jobs, at which

point the VE provided two sedentary jobs that would meet the hypothetical RFC, table worker

and printed circuit board assembly—which were the same jobs the ALJ included in his Step 5

analysis. (Docket No. 13-2 at ECF p. 75).

The critical point during the testimony is that the exertional and non-exertional

limitations within the RFC did not change at any point. These limitations, which the ALJ

provided to the VE, are the same limitations that the ALJ provided in his ultimate RFC. The

Plaintiff critiques the RFC because it maintains the light work exertional category instead of

sedentary. However, given the requirement that an RFC is supposed to capture the most a

claimant can do and then, pursuant to 96-8p, the ALJ is supposed to add additional limitations according to a claimant's specific impairments, it seems logical that the ALJ used the exertional category that aligned with Plaintiff's greatest capabilities and then reduced that category as necessary. The ALJ even explained within the hearing testimony that he started at light work given the Plaintiff's essentially unrestricted lifting and carrying capabilities and then added limitations for Plaintiff's other impairments. The ALJ did not err in this regard.

### D. The ALJ did not err in his treatment of the claimant's work history.

Finally, Mr. Sims argues that the ALJ failed to properly address his moderate limitations in maintaining concentration, persistence, or pace. ([Docket No. 17 at ECF p. 30](#)). Specifically, he argues that the RFC accounts for no findings of any limitations with concentration, persistence, or pace despite finding that he was moderately limited in this respect. *Id.* He argues that the ALJ's limitation that Sims could occasionally handle and sort papers and use paper files effectively limited Plaintiff to unskilled work only, which the Seventh Circuit has repeatedly rejected this type of limitation as accounting for deficiencies in concentration, persistence, and pace. ([Docket No. 17 at ECF p. 30](#)). He asserts that the ALJ's hypothetical accounted for only the complexity component of tasks and did not account for the claimant's ability to stick with a task over a sustained period. ([Docket No. 17 at ECF p. 32](#)).

The Commissioner responds that the ALJ's to find Plaintiff was moderately limited in concentration, persistence, and pace was due to his difficulty reading and writing. ([Docket No. 22 at ECF p. 11](#)). She defends the ALJ by recounting that the ALJ provided his limited ability to read and write was the specific and *only* cause of his limitations in concentration, persistence, and pace—therefore, limiting an RFC to occasion handling, sorting papers, and using paper files was sufficient because it addressed this specific limitation. *Id.* Finally, the Commissioner points

out that Plaintiff points to no evidence that would support any different or greater limitations related to concentration, persistence, or pace. *Id.*

At Step 3, the ALJ found that the Plaintiff had moderate difficulties in concentration, persistence or pace, noting that he completed the tenth grade and has trouble reading and writing, but that the Plaintiff also plays video games with his daughter. (Docket No. 13-2 at ECF p. 22). In his RFC determination the ALJ indicated that "due to limitations regarding the ability to read and write, the claimant is limited to occasional handling, sorting papers and using paper files." (Docket No. 13-2 at ECF p. 23). During the hearing he also made it clear that he added these limitations "solely due to an inability to read and write well." (Docket No. 13-2 at ECF p. 72).

The Seventh Circuit requires the ALJ to include the claimant's limitations in both his residual functional capacity and the hypotheticals to the vocational examiner. *Similia v. Astrue*, 573 F.3d 503, 520-21 (7th Cir. 2009). The most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include them in the hypothetical. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). However, the Seventh Circuit does not have "a per se requirement that this specific terminology ('concentration, persistence and pace') be used in the hypothetical in all cases." *Id.* A hypothetical is sufficient "when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id.*

The court finds that the ALJ's hypotheticals and RFC's met the standards set forth in *O'Connor-Spinner* and its lineage. In regards to the hypothetical, the ALJ did not employ the boilerplate language criticized by the Seventh Circuit such as "simple routine, repetitive tasks." Instead the ALJ's limitations to occasional handling, sorting or use of paper files specifically addressed the Plaintiff's reading and writing challenges—which were the exact challenges that

led to his moderate limitations in concentration, persistence, or pace. These terms were used in both the hypothetical and the RFC, thus all of claimant's limitations supported by the medical record were included and the ALJ did not err. Sims argues that there was no limitations for "claimant's ability to stick with a task over a sustained period," yet the ALJ did not address this specific component of concentration, persistence, or pace as a limitation that the Plaintiff held nor does the Plaintiff cite any evidence to show he had limitations in this regard. The hypotheticals to the VE and the RFC need only contain limitations supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 845-46 (7th Cir. 2007). The ALJ did not err in this regard.

## Conclusion

For all these reasons, the Magistrate Judge recommends the court grant Plaintiff's brief in support of appeal (Docket No. 17) and that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 28th day of July, 2017.

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.